1                UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF WASHINGTON

3   LUIGI ONORATO,                    )
                                      )
4                                     )    No. CV-11-0197-FVS
            Plaintiff,                )
5                                     )
                                      )    ORDER GRANTING DEFENDANT'S
6            v.                       )    MOTION FOR SUMMARY JUDGMENT
                                      )
7                                     )
                                      )
8   MICHAEL J. ASTRUE, Commissioner   )
    of Social Security,               )
9                                     )
                                      )
10           Defendant.               )
                                      )

11

12        **BEFORE THE COURT** are cross-motions for summary judgment noted

13   for hearing without oral argument.  (ECF No. 17, 22).  Attorney

14   Maureen J. Rosette represents plaintiff; Special Assistant United

15   States Attorney Lisa Goldoftas represents the Commissioner of

16   Social Security (defendant).  After reviewing the administrative

17   record and the briefs filed by the parties, the Court **grants**

18   defendant's Motion for Summary Judgment.

19                           **JURISDICTION**

20        Plaintiff filed an application for supplemental security

21   income (SSI) on May 27, 2008, alleging disability as of January 7,

22   2003.  At the administrative hearing, Plaintiff's attorney amended

23   the alleged onset date to May 27, 2008, the date of the

24   application (Tr. 601-602).[1]  The application was denied initially

25   and on reconsideration.

26   _____

27        [1]Plaintiff filed a prior application in 2005, alleging
     disability beginning January 1, 2002, and a decision denying
28   benefits in that case was issued on May 14, 2008 (Tr. 13-29).

Administrative Law Judge (ALJ) R.J. Payne held a hearing on September 2, 2009 (Tr. 599-631). The ALJ issued an unfavorable decision on September 3, 2009 (Tr. 349-355). The Appeals Council denied review on April 28, 2011 (Tr. 338-342). The ALJ's September 3, 2009 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 17, 2011. (ECF Nos. 2 & 4).

STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on March 7, 1980, and was 29 years old at the time of the alleged onset date (Tr. 611). At the administrative hearing, Plaintiff testified he was single, had no children, and was a high school graduate (Tr. 611). His sole source of income at the time was public assistance (Tr. 623). Plaintiff alleges he stopped working in 2005 because of stress, paranoia and hearing voices (Tr. 616). Plaintiff testified he had been hearing voices for about five years prior to the administrative hearing (Tr. 617). He stated that while medications helped with the voices, he heard voices every day, nearly all day (Tr. 618).

Plaintiff indicated he generally stays home, keeps to himself and spends a lot of time watching sports on television (Tr. 619-620, 628-629). He stated his sleep was adequate, he is able to shop for groceries, and he is able to keep in contact by phone with family and a friend (Tr. 619). He is not able to drive, but

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  is able to get around by taking the bus (Tr. 620).  In fact, he

2  stated he had traveled by bus to California to visit his family

3  one month prior to the administrative hearing (Tr. 628).

4      Plaintiff testified he stopped using illegal drugs about five

5  or six years prior to the administrative hearing (Tr. 621-622).

6  He told the ALJ his drug of choice was marijuana and that he had

7  also "tried" cocaine (Tr. 622).  The record, however, reflects

8  more substantial drug use by plaintiff.  The record shows that

9  plaintiff "relapsed on snorted and IV cocaine use" and was using

10 cocaine and methamphetamine for approximately two weeks in April

11 2006 (Tr. 241); was using heroine, methamphetamine and cocaine

12 about nine months prior to an August 21, 2007 doctor's appointment

13 (Tr. 273); and, in early 2007, was living in transitional housing

14 for people with a history of substance abuse (Tr. 511).  Plaintiff

15 also reported to Catholic Charities Counseling in November 2007

16 that he had "used everything but mainly cocaine" (Tr. 292).  He

17 reported he had been clean for one year (Tr. 292).

18                    **SEQUENTIAL EVALUATION PROCESS**

19     The Social Security Act (the Act) defines disability as the

20 "inability to engage in any substantial gainful activity by reason

21 of any medically determinable physical or mental impairment which

22 can be expected to result in death or which has lasted or can be

23 expected to last for a continuous period of not less than twelve

24 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also

25 provides that a plaintiff shall be determined to be under a

26 disability only if any impairments are of such severity that a

27 plaintiff is not only unable to do previous work but cannot,

28 considering plaintiff's age, education and work experiences,

1   engage in any other substantial gainful work which exists in the
2   national economy.   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
3   Thus, the definition of disability consists of both medical and
4   vocational components.   *Edlund v. Massanari*, 253 F.3d 1152, 1156
5   (9th Cir. 2001).

6      The Commissioner has established a five-step sequential
7   evaluation process for determining whether a person is disabled.
8   20 C.F.R. §§ 404.1520, 416.920.   Step one determines if the person
9   is engaged in substantial gainful activities.   If so, benefits are
10  denied.   20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).   If
11  not, the decision maker proceeds to step two, which determines
12  whether plaintiff has a medically severe impairment or combination
13  of impairments.   20 C.F.R. §§ 404.1520(a)(4)(ii),
14  416.920(a)(4)(ii).

15     If plaintiff does not have a severe impairment or combination
16  of impairments, the disability claim is denied.   If the impairment
17  is severe, the evaluation proceeds to the third step, which
18  compares plaintiff's impairment with a number of listed
19  impairments acknowledged by the Commissioner to be so severe as to
20  preclude substantial gainful activity.   20 C.F.R. §§
21  404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
22  App. 1.   If the impairment meets or equals one of the listed
23  impairments, plaintiff is conclusively presumed to be disabled.
24  If the impairment is not one conclusively presumed to be
25  disabling, the evaluation proceeds to the fourth step, which
26  determines whether the impairment prevents plaintiff from
27  performing work which was performed in the past.   If a plaintiff
28  is able to perform previous work, that plaintiff is deemed not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At
2  this step, plaintiff's residual functional capacity (RFC) is
3  considered.  If plaintiff cannot perform past relevant work, the
4  fifth and final step in the process determines whether plaintiff
5  is able to perform other work in the national economy in view of
6  plaintiff's residual functional capacity, age, education and past
7  work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
8  *Bowen v. Yuckert*, 482 U.S. 137 (1987).

9     The initial burden of proof rests upon plaintiff to establish
10 a *prima facie* case of entitlement to disability benefits.
11 *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
12 *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
13 met once plaintiff establishes that a physical or mental
14 impairment prevents the performance of previous work.  The burden
15 then shifts, at step five, to the Commissioner to show that (1)
16 plaintiff can perform other substantial gainful activity and (2) a
17 "significant number of jobs exist in the national economy" which
18 plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
19 Cir. 1984).

20 **STANDARD OF REVIEW**

21    Congress has provided a limited scope of judicial review of a
22 Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
23 the Commissioner's decision, made through an ALJ, when the
24 determination is not based on legal error and is supported by
25 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
26 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
27 1999).  "The [Commissioner's] determination that a plaintiff is
28 not disabled will be upheld if the findings of fact are supported

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is

conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ determined, at step one, that plaintiff has not engaged in substantial gainful activity since May 27, 2008, the alleged onset date (Tr. 351).  At step two, the ALJ found there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (Tr. 351, 355). In formulating this step two determination, the ALJ accorded weight to the testimony of Dr. McKnight and the opinions given by Dr. Bailey and gave little weight to the opinions of Dr. Rosekrans.  The ALJ concluded that plaintiff was not disabled as defined by the Act from May 27, 2008, through the date of his decision, September 3, 2009 (Tr. 355).

**ISSUE**

Plaintiff alleges the ALJ erred at step two of the sequential evaluation process.  Plaintiff argues that he has provided ample evidence proving the existence of a severe psychological impairment.  (ECF No. 18 at 7-15).

**DISCUSSION**

Plaintiff contends that the ALJ erred by rejecting the opinions of examining physician, Dr. Rosekrans, and instead giving weight to the opinions of a nonexamining medical expert, Dr. McKnight, to find that plaintiff does not have a severe impairment at step two of the sequential evaluation process.

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining

physicians) and those who neither examine nor treat the claimant
(nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839
(9ᵗʰ Cir. 1996).  The Ninth Circuit has held that "[t]he opinion
of a nonexamining physician cannot by itself constitute
substantial evidence that justifies the rejection of the opinion
of either an examining physician or a treating physician."
*Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the
opinion of a treating or examining physician, may be *based in part*
on the testimony of a nonexamining medical advisor.  *Magallanes*,
881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9ᵗʰ
Cir. 1995).  The ALJ must also have other evidence to support the
decision such as laboratory test results, contrary reports from
examining physicians, and testimony from the claimant that was
inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d
at 751-52; *Andrews,* 53 F.3d 1042-43.  Moreover, an ALJ may reject
the testimony of an examining, but nontreating physician, in favor
of a nonexamining, nontreating physician only when he gives
specific, legitimate reasons for doing so, and those reasons are
supported by substantial record evidence.  *Roberts v. Shalala*, 66
F.3d 179, 184 (9ᵗʰ Cir. 1995).

Frank Rosekrans, Ph.D., examined plaintiff on five occasions.
On May 3, 2005, Dr. Rosekrans diagnosed Schizophrenia, paranoid
type, and gave plaintiff a global assessment of functioning
("GAF") score of 35[2] (Tr. 229-235).  Plaintiff denied past or

---

[2]A GAF of 40-31 indicates:  "[s]ome impairment in reality
testing or communication OR major impairment in several areas,
such as work or school, family relations, judgment, thinking, or
mood."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4ᵗʰ ed.
1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

current drug use at the time (Tr. 233).  The MMPI-2 was invalid,
but Dr. Rosekrans indicated the results of the MMPI-2 "should be
considered a cry for help, and should not be considered invalid
due to malingering" (Tr. 234).  On May 9, 2006, Dr. Rosekrans
reported that because it was obvious that plaintiff had given
invalid effort on prior testing, he gave plaintiff a great deal of
encouragement and spent extra time getting rapport with plaintiff
(Tr. 492).  He indicated that instead of following the manual
procedure, he gave extra feedback in order to get plaintiff's best
performance (Tr. 492).  It was nonetheless noted that the MMPI-2
validity scales again indicated plaintiff's answers were not valid
and suggested he exaggerated his problems beyond the point where
his profile could be interpreted (Tr. 494).  Plaintiff was
observed during testing "simply entering True or False and 'Enter'
apparently without reading the questions" (Tr. 494).  Dr.
Rosekrans diagnosed Schizoaffective Disorder and Borderline
Intellectual functioning and gave plaintiff a GAF score of 45[3]
(Tr. 494).  Dr. Rosekrans opined that plaintiff's obvious and
blatant malingering was indicative of a person with a mental
illness who is desperate for help and naively doing what they
think will get them help, rather than a person without problems
trying to fake mental illness (Tr. 494).

On January 10, 2008, plaintiff was referred to Dr. Rosekrans
by DSHS for an evaluation to help determine if plaintiff could

---

[3]A GAF of 50-41 reflects:  "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessive rituals, frequent
shoplifting) or any serious impairment in social, occupational,
or school functioning (e.g., no friends, unable to keep a job)."
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

perform work (Tr. 519).  It was noted plaintiff had applied for SSI and had a hearing coming up soon (Tr. 521).  Dr. Rosekrans indicated plaintiff "did not mention voices during the interview, and given his history of malingering, I did not press him" (Tr. 520).  Dr. Rosekrans opined that plaintiff may have voices as he claimed, or he may be exaggerating because he is so anxious about getting help (Tr. 521).  Dr. Rosekrans diagnosed Schizoaffective Disorder and Borderline Intellectual Functioning and gave plaintiff a GAF score of 55[4] (Tr. 521).

On December 9, 2008 plaintiff was again referred to Dr. Rosekrans by DSHS for an evaluation to help determine if plaintiff was unable to perform any work because of mental illness (Tr. 552).  It was noted that plaintiff applied for SSI but Dr. Bailey had diagnosed malingering which prevented plaintiff from being granted benefits (Tr. 553).  Dr. Rosekrans diagnosed Schizophrenia, Paranoid Type, Continuous, and Borderline Intellectual Functioning and gave plaintiff a GAF score of 30[5] (Tr. 552-558).  Dr. Rosekrans indicated plaintiff was seriously mentally ill and the condition was chronic and not likely to improve significantly (Tr. 554).  On June 4, 2009, plaintiff was again referred by DSHS for an evaluation (Tr. 559-565).  Plaintiff indicated he had applied for SSI and hoped to move back near

---

[4]A GAF of 60-51 reflects:  Moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

[5]A GAF of 30-21 is characterized as:  "Behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

family if he was approved (Tr. 561).  Dr. Rosekrans again
diagnosed Schizophrenia, paranoid type, continuous, and Borderline
Intellectual Functioning and gave plaintiff a GAF score of 45 (Tr.
561).  It was noted that PAI validity scales indicated his answers
were not valid and the interpretive program did not interpret his
profile (Tr. 560).  During one portion of testing, plaintiff
finished 125 items in about 45 minutes, asked if he had to
complete the test, was told it would be helpful if he would do so,
and then completed the remaining 200 items in about 15 minutes in
what appeared to be random responding (Tr. 560).

    Dr. R. Thomas McKnight, Ph.D., testified as a medical expert
at the administrative hearing (Tr. 603-610).  Dr. McKnight stated
the record was "complete with persistent and continuing elements
of malingering" (Tr. 604).  He indicated there was no clear basis
for plaintiff to have been prescribed Zyprexa and Prozac along
with Hydrazine and there was no work up which would lead one to
conclude plaintiff has a bi-polar disorder (Tr. 604, 610).  Dr.
McKnight stated results of a May 2005 MMPI were invalid and
"literally off the top of the scale," there was indication that
plaintiff was making every attempt possible to present himself in
a negative light, and further testing revealed no effort at all
(Tr. 604).  Dr. McKnight testified that Dr. Bailey's November 2005
psychological evaluation was positive for malingering (Tr. 604-
605).  Another evaluation completed by Dr. Bailey in March 2006
revealed poor effort by plaintiff and was positive for malingering
(Tr. 605).  Dr. McKnight stated that an exam conducted under the
direction of Kathy Holmes, Ph.D., also revealed elevated scores
characteristic of individuals feigning a mental disorder.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1   Plaintiff was discharged from the mental health clinic with a

2   diagnosis of malingering (Tr. 606).  Dr. McKnight opined that the

3   only consistent conclusion is that plaintiff is malingering (Tr.

4   608).

5       Dr. McKnight also discussed Dr. Rosekrans' evaluations (Tr.

6   605-606).  Dr. McKnight indicated that Dr. Rosekrans' failure to

7   follow the manual procedure in his May 2006 exam is a violation of

8   the standards of administration and potentially invalidated the

9   entire exam (Tr. 606).  The MMPI on this exam was invalid which

10  suggested an over reporting of problems and malingering (Tr. 606).

11  The examination completed by Dr. Rosekrans did not include an

12  assessment of malingering, and Dr. Rosekrans diagnosed schizo-

13  affective disorder and borderline intellectual functioning (Tr.

14  607).  Dr. McKnight stated the basis for those diagnoses was

15  unclear given the testing completed and the fact that Dr.

16  Rosekrans violated the rules of the assessment by his own

17  admission (Tr. 607).  Dr. McKnight noted that in the final

18  examination completed by Dr. Rosekrans a computer interpretive

19  profile was used, and the computer failed to complete the

20  evaluation because plaintiff was so egregious in over reporting

21  psychological problems (Tr. 608).  Dr. McKnight opined that Dr.

22  Rosekrans was "emphatically incorrect" and "has ignored the data

23  that he summarized in his own reports" (Tr. 609).

24      As noted above, "[t]he opinion of a nonexamining physician

25  cannot by itself constitute substantial evidence that justifies

26  the rejection of the opinion of either an examining physician or a

27  treating physician."  *Lester*, 81 F.3d at 830.  In this case, while

28  the ALJ accorded significant weight to the testimony of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

medical expert, substantial evidence in addition to Dr. McKnight's
testimony justifies the ALJ's rejection of Dr. Rosekrans'
opinions.

As indicated by the ALJ, the diagnosis given by Dr. Rosekrans
of paranoid schizophrenia is not supported by the record (Tr.
354).  It appears the diagnosis is based on plaintiff's self-
report of hearing voices, paranoia and suicide attempts, yet there
is no documentation in the record to support plaintiff's
allegations of hearing voices, paranoia and suicide attempts[6] (Tr.
354-355).  In fact, Dr. Rosekrans even noted in his January 10,
2008 report that plaintiff "did not mention voices during the
interview" and opined at that time that plaintiff may hear voices
as he claimed or he may be exaggerating (Tr. 520-521).  The ALJ
notes that Plaintiff has not had any psychiatric hospitalizations,
and there is only one counseling note in the record, dated
December 21, 2006 (Tr. 352-353).  "Prior to that he had an intake
on February 27, 2006, but he did not return for services because
he was not motivated" (Tr. 352, 500).

Dr. Rosekrans admittedly failed to follow the manual
procedure in his May 2006 exam in violation of the standards of
administration (Tr. 355, 606).  Furthermore, in the last
examination completed by Dr. Rosekrans, the computer profile
utilized by Dr. Rosekrans was invalid (Tr. 608).  The computer

---

[6]The ALJ stated plaintiff "claimed to have attempted suicide
on three occasions, twice by cutting himself but neither time
requiring medical attention.  As for the third attempt, he
jumped off a bridge and suffered only minor injuries.  There is
no evidence in the record to corroborate these statements." (Tr.
352).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

failed to interpret the entirety of the examination because
plaintiff was "so egregious in over reporting psychological
problems" (Tr. 608).  It is also significant to note that the
evaluations completed by Dr. Rosekrans during the relevant time
period were on referral from DSHS to determine whether plaintiff
could perform work.  Plaintiff's SSI applications were documented
and discussed in these reports.  *See Crane v. Shalala*, 76 F.3d
251, 254 (9th Cir. 1996) (When a physician is involved in the
application process, thus becoming an advocate for the claimant,
an ALJ is entitled to consider this factor in evaluating his
testimony).

   As discussed by the ALJ, Dr. Bailey diagnosed plaintiff with
malingering on two occasions, on January 10, 2005, and March 21,
2006 (Tr. 354).  On January 30, 2007, plaintiff was evaluated
under the direction of Dr. Holmes at Spokane Mental Health.
Plaintiff was discharged from Spokane Mental Health with the
diagnosis of malingering.  Moreover, nearly all examinations
performed by Dr. Rosekrans demonstrated plaintiff was malingering.
While Dr. Rosekrans tried to explain plaintiff's malingering as "a
cry for help" rather than an attempt to fake mental illness, it
does not change the fact that plaintiff was obviously malingering
during the evaluations.  Malingering, as defined by Dr. McKnight
at the administrative hearing, is the willful feigning of a
disorder for personal gain (Tr. 609).  Malingering is not a
symptom of mental illness.  As opined by Dr. McKnight, the only
consistent conclusion is that plaintiff is malingering.

   The undersigned also finds it important to note that the
record shows plaintiff "relapsed on snorted and IV cocaine use"

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14

and was using cocaine and methamphetamine for approximately two
weeks in April 2006 (Tr. 241); was using heroine, methamphetamine
and cocaine about nine months prior to an August 21, 2007 doctor's
appointment (Tr. 273); and, in early 2007, was living in
transitional housing for people with a history of substance abuse
(Tr. 511).  Therefore, it appears Defendant was using heroine,
methamphetamine and cocaine at least during the time period of Dr.
Rosekrans' early examinations of Defendant, yet Defendant denied
past or current drug use during that time (Tr. 233).  Defendant
continued to lie about his drug use at the September 2009
administrative hearing when he told the ALJ that he stopped using
illegal drugs about five or six years prior to the hearing and
that he had previously only "tried" cocaine (Tr. 621-622).

In this case, the ALJ provided specific, legitimate reasons
for rejecting the opinions of Dr. Rosekrans and for according
weight to the opinions of the medical expert, Dr. McKnight.  Those
reasons are supported by substantial record evidence.  *Roberts*, 66
F.3d at 184.

It is the responsibility of the ALJ to determine credibility,
resolve conflicts in medical testimony and resolve ambiguities.
*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The Court has
a limited role in determining whether the ALJ's decision is
supported by substantial evidence and may not substitute its own
judgment for that of the ALJ even if it might justifiably have
reached a different result upon de novo review.  42 U.S.C. §
405(g).  Where, as here, the ALJ has made specific findings
justifying a decision, and those findings are supported by
substantial evidence in the record, our role is not to second-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Accordingly, the ALJ did not err by rejecting the opinions of Dr. Rosekrans and by giving weight to the opinions of Dr. McKnight.

Plaintiff has the burden of proving that he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he has a severe impairment. 20 C.F.R. § 416.912(a). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that plaintiff did not have a medically severe impairment. *Webb*, 433 F.3d at 687.

As discussed above, the only supportable diagnosis in the record is malingering. The credible medical evidence of record does not establish that plaintiff had a severe psychological impairment. The Court thus finds that the ALJ's determination that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment is supported by substantial evidence. The ALJ did not err at step two of the sequential evaluation process.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 22**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 17**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this  7th  day of December, 2012.

S/Fred Van Sickle
_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17